<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000696
09-APR-2021
11:22 AM
Dkt. 132 ODMR**</span>

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

KONDAUR CAPITAL CORPORATION,
A DELAWARE CORPORATION, Plaintiff-Appellee,
v.
LEIGH MATSUYOSHI, Defendant-Appellant,
and
JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS
1-10, DOE CORPORATIONS 1-10, DOE ENTITIES 1-10,
ALL PERSONS RESIDING WITH AND ANY PERSONS CLAIMING
BY AND THROUGH OR UNDER THEM, Defendants

NO. CAAP-19-0000696

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 12-1-0185 (RGV))

APRIL 9, 2021

GINOZA, CHIEF JUDGE, WADSWORTH AND NAKASONE, JJ.

ORDER DENYING MOTION FOR RECONSIDERATION
BY GINOZA, CHIEF JUDGE

Defendant-Appellant Leigh Matsuyoshi (**Matsuyoshi**) seeks
reconsideration of the February 18, 2021 "Order Denying Motion
for Recusal or Disqualification by Wadsworth, J." (**Order**),

pursuant to, <u>inter</u> <u>alia</u>, Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 27(c). <u>See</u> <u>Kondaur Capital Corp. v. Matsuyoshi</u>, 2021 WL 640548, at *1 n.1 (Haw. App. Feb. 18, 2021).[1/]  In the Order, Judge Wadsworth declined to recuse himself under Hawaiʻi Revised Code of Judicial Conduct (**HRCJC**) Rules 2.11(a) and 1.2 because: (1) his prior representation of mortgagees in other nonjudicial foreclosure cases while in private practice does not provide an objective basis to conclude that his impartiality in this appeal "might reasonably be questioned," HRCJC Rule 2.11(a); (2) his prior representation of mortgagees in other cases, including in <u>Bald v. Wells Fargo Bank</u> (**Bald**), Civil No. 13-00135 SOM/KSC, 2013 WL 3864449 (D. Haw. July 25, 2013), does not concern "the matter in controversy," HRCJC Rule 2.11(a)(6)(A); (3) his February 14, 2014 declaration filed in <u>Bald v. Wells Fargo Bank, N.A.</u> (**Bald appeal**), 688 Fed. Appx. 472 (9th Cir. 2017), does not render him "a witness concerning the matter [in controversy]," HRCJC Rule 2.11(a)(6)(C); and (4) the above factors do not create "an appearance of impropriety," HRCJC Rule 1.2.[2/]  <u>See</u> Order, 2021 WL 640548, at *9-19.

In "[Matsuyoshi's] Motion for Full Court Reconsideration of Dkt. 122, 'Order Denying Motion for Recusal or Disqualification by Wadsworth, J.,' Filed on February 18, 2021," filed on March 1, 2021 (**motion for reconsideration**), Matsuyoshi argues that: (a) "[t]he analysis of H[R]CJC Rule 2.7 comes only after the [HRCJC] Rule 2.11 analysis is complete"; (b) "Judge Wadsworth is an <u>appellate</u> judge and the matter in controversy is

---

[1/]  Judge Wadsworth decided "[Matsuyoshi's] Motion for Recusal or Disqualification of Judge Clyde J. Wadsworth" (**recusal motion**), filed on December 21, 2020, and entered the Order pursuant to HRAP 27(c).  <u>See</u> Order, 2021 WL 640548 at *1 n.1.  HRAP Rule 27(c) provides that, "[i]n addition to authority conferred by rule or law, a single judge or justice may decide any motion before the court on which the judge or justice sits," subject to certain exceptions not applicable here.  "Any party adversely affected by the action of a single judge or justice may, by application to the court on which the judge or justice sits, request reconsideration, vacation, or modification of such action."  HRAP Rule 27(c).

[2/]  The Order is attached hereto as Appendix A.  The cited rules are quoted in the Order.

2

an <u>appellate</u> issue of law that will directly impact currently pending cases[,]" including <u>Bald</u>; (c) "[t]he instant case involves an issue that is also present in [<u>Bald</u>,] . . . so this decision will have [a] real and significant impact on one of Judge Wadsworth's former cases";[3] and (d) "Judge Wadsworth formerly claimed that the group of cases being handled by mortgagors' counsel were all 'directly related' to each other, and were all part of an 'effort' to 'rewrite' Hawaii law at the appellate level[.]"[4]  (Capitalization altered.)

Upon a thorough review of the issues raised, we deny the motion for reconsideration.  See HRAP Rule 40.[5]

## I.  Standard of Review

Matsuyoshi's motion for reconsideration is governed by HRAP Rule 40(b), which provides in pertinent part that a motion for reconsideration "shall state with particularity the points of law or fact that the moving party contends the court has overlooked or misapprehended, together with a brief argument on the points raised."  In addressing a motion for reconsideration of an appellate decision, the Hawaiʻi Supreme Court stated that "[t]he purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion." <u>Citizens for Equitable & Responsible Gov't v. County of Hawaiʻi</u>, 108 Hawaiʻi 318, 335, 120 P.3d 217, 234 (2005) (quoting <u>Amfac, Inc. v. Waikiki Beachcomber Inv. Co.</u>, 74 Haw. 85, 114, 839 P.2d 10, 27 (1992)).  Thus, a motion for reconsideration is not the

---

[3]     In this argument, Matsuyoshi also refers to a class action against Deutsche Bank, which apparently is a reference to <u>Lima v. Deutsche Bank Nat'l Trust Co.</u>, Civ. No. 12-00509 SOM-WRP, which Matsuyoshi contends raises the question "whether sales are void because a proper notice of acceleration was not delivered as required by the mortgage[.]"  As discussed *infra*, <u>Lima</u> -- like <u>Bald</u> -- does not raise the mail delivery issue that is at issue in this appeal.  Further, Judge Wadsworth was not counsel in <u>Lima</u>.

[4]     The motion for reconsideration does not challenge the Order's conclusion that Matsuyoshi has not established a statutory basis for disqualification under Hawaii Revised Statutes (**HRS**) § 601-7(b).  See Order, 2021 WL 640548, at *9.

[5]     Pursuant to HRAP Rule 2, we extended the time requirement in HRAP Rule 40(d) for resolving this motion for reconsideration.

time to present new evidence or arguments that could have been raised earlier.  Id.

## II.  Discussion

### A.  Recusal Standard

Matsuyoshi first argues that the Order "misapprehend[s] the recusal standard" because it "emphasize[s] a judge's duty not to recuse unnecessarily" over the recusal criteria of HRCJC Rule 2.11.

We disagree.  The Order accurately sets forth the relevant disqualification and recusal standards based on the applicable statute and rules, as well as pertinent case law interpreting and applying those authorities.  See Order, 2021 WL 640548, at *6-8.  As part of this discussion, the Order acknowledges that in reviewing recusal decisions, the Hawaiʻi Supreme Court has repeatedly stated that

> a judge owes a duty not to withdraw from a case —
> [howevermuch] his personal feelings may incline him to
> do so — where the circumstances do not fairly give
> rise to an appearance of impropriety and do not
> reasonably cast suspicion on his [or her]
> impartiality.

Id. at *7 (quoting State v. Ross, 89 Hawaiʻi 371, 377, 974 P.2d 11, 17 (1998) (quoting State v. Brown, 70 Haw. 459, 467 n.3, 776 P.2d 1182, 1188 n.3 (1989))).  The Order properly recognizes the above relevant considerations in recusal decisions, which are ultimately anchored by the statement, "the circumstances do not fairly give rise to an appearance of impropriety and do not reasonably cast suspicion on his [or her] impartiality."  Id.

Indeed, the Order sets out, and then applies, the two-part analysis for addressing the issue of disqualification or recusal, as summarized in Chen v. Hoeflingner, 127 Hawaiʻi 346, 361, 279 P.3d 11, 26 (2012).  See also Arquette v. State, 128 Hawaiʻi 423, 447, 290 P.3d 493, 517 (2012).[6]

---

[6]  In Arquette, the Hawaiʻi Supreme Court stated that "[d]isqualification or recusal cases involve a two-part analysis[,]" which it set out as follows:

(continued...)

4

Matsuyoshi also argues that "a judge's duty not to recuse unnecessarily" addresses only the "lesser evil" of "a judge who . . . recuses himself or herself for the *wrong* reasons[,]" i.e., because a case presents difficult or controversial issues. We note, however, that recusal decisions reflect the need to ensure public confidence in the impartiality of the courts, as well as "the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." Belue v. Leventhal, 640 F.3d 567, 574 (4th Cir. 2011) (quoting In re United States, 441 F.3d 44, 67 (1st Cir. 2006) (construing parallel federal law)); see also Philip Morris USA Inc. v. United States Food & Drug Admin., 156 F. Supp. 3d 36, 48 (D.D.C. 2016) (declining to recuse in part "because [the judge's] acceptance of Plaintiff's position would encourage judge-shopping by litigants").

We conclude that the Order did not overlook or misapprehend the applicable recusal standards.

**B. The Present Appeal and Bald**

We next address Matsuyoshi's third contention, see supra, as it appears to underlie her remaining arguments. Specifically, Matsuyoshi contends that the current appeal involves an issue that is present in Bald, which is still pending

---

[6]/ (...continued)

First, "HRS § 601-7 (Supp.2004) is applied to determine whether the alleged bias is covered by any of the specific instances prohibited therein." [Ross, 89 Hawaiʻi at 377, 974 P.2d at 17.] Then, "if the alleged bias falls outside of the provisions of HRS § 601-7, the court may turn, if appropriate, to the notions of due process described in Brown in conducting the broader inquiry of whether 'circumstances fairly give rise to an appearance of impropriety and reasonably cast suspicion on the judge's impartiality.'" Id. (quoting Brown, 70 Haw. at 467 n.3, 776 P.2d at 1188 n.3).

128 Hawaiʻi at 447, 290 P.3d at 517 (footnote, brackets, and ellipses omitted).

before the federal district court in Hawaiʻi,[7] and in which Judge Wadsworth represented Defendant Wells Fargo Bank, N.A. (**Wells Fargo**) until December 2016.

In the recusal motion, Matsuyoshi argued that "[a] decision herein on the question of <u>whether certified mail is deemed delivered upon mailing</u> will directly impact and call into question a large number of foreclosures conducted by . . . Wells Fargo . . ., which used the certified mail method extensively, including foreclosures that remain at issue in <u>Bald</u> . . ., a case in which Judge Wadsworth formerly acted as counsel for the mortgagee bank." (Emphasis added.) In the motion for reconsideration, however, Matsuyoshi now argues that "[t]he Order's reference to the issue as 'the mail delivery issue' gives it an overly narrow appearance." We do not agree with this assertion.

The Order quotes at length Matsuyoshi's opening brief in this appeal in describing the "mail delivery issue." <u>See</u> Order, 2021 WL 640548, at *4. In the recusal motion, Matsuyoshi pointed to Paragraph 17.a. of the First Amended Complaint in <u>Bald</u> as raising the same issue. The Order accurately states that Paragraph 17.a. does not appear to raise the same issue.[8] <u>See</u>

---

[7] As stated in the Order, the federal district court has stayed further proceedings in <u>Bald</u> pending action by the Hawaiʻi Supreme Court on a certified question of state law. <u>See</u> Order, 2021 WL 640548, at *6.

[8] Paragraph 17.a. of the First Amended Complaint in <u>Bald</u> alleges the following:

> 17. WELLS FARGO further breached its duties in a substantial number of such cases by foreclosing after performing one or more of the following unlawful or wrongful acts:
>
> a. Sending the borrower a notice of acceleration that failed to give the notice that the standard form mortgage required about the unconditional right the borrower had to bring a separate suit to stop the sale[.]

These allegations in <u>Bald</u> address the alleged improper *substance* of a notice of acceleration, which is not the same issue raised in this appeal, *i.e.* whether a notice to cure default was properly and timely mailed or delivered to Matsuyoshi.

id. at *17.[9/]  Accordingly, the record does not support Matsuyoshi's current assertion that the same mail delivery issue raised in this appeal has been raised in Bald.  To the contrary, a fair reading of the pleadings in Bald indicates otherwise.

Matsuyoshi further contends that the Order is wrong in concluding that, given the current procedural posture of Bald, one can only speculate as to whether a decision in this appeal will have any effect on the plaintiffs' claims in Bald, such that Matsuyoshi has not established a sufficient relationship between the present appeal and Bald for purposes of considering the two cases the same "matter in controversy" under HRCJC Rule 2.11(a)(6)(A).  See Order, 2021 WL 640548, at *17.  In this regard, Matsuyoshi argues that the "'same matter in controversy' [test] applies only to recusals resting on H[R]CJC Rule 2.11(a)(6), and Matsuyoshi relies generally on Rule 2.11(a), which makes clear that recusal is mandated 'in *any* proceeding in which the judge's impartiality *might* reasonably be questioned[.]'"

We first note that Matsuyoshi devoted several pages of her recusal motion asserting that the present appeal and Bald are so substantially related as to constitute the same "matter in controversy" for purposes of HRCJC Rule 2.11(a)(6)(A).  The Order properly addresses that argument.  The Order also analyzes Matsuyoshi's arguments regarding Judge Wadsworth's former representation of mortgagees in other litigation under HRCJC Rules 2.11(a) and 1.2.  See Order, 2021 WL 640548, at *10-12, *18-19.  Matsuyoshi's failure to establish a close relationship

---

[9/]  The Order also acknowledges the apparent intention of counsel for Matsuyoshi to litigate a mail delivery issue in Bald when the current federal court stay is lifted.  However, whether the mail delivery issue in this case is eventually raised in Bald is speculative at best given the posture of the Bald case, where it is pending in the Hawaiʻi Supreme Court to address issues that the U.S. District Court has indicated may be dispositive. Further, if a party could disqualify an appellate judge by simply asserting plans to raise an issue in the future in a separate and unrelated pending case in which a judge was previously involved as counsel, this would open the door for judge shopping.  In short, given the circumstances, speculation that the mail delivery claim at issue in this case will be asserted in Bald in the future does not provide an objectively reasonable basis to question Judge Wadsworth's impartiality in this case.

between the present appeal and <u>Bald</u> is relevant to this analysis. As stated in the Order, "[w]here the connection to an alleged disqualifying interest is 'too attenuated,' the Hawaiʻi Supreme Court has rejected arguments that such circumstances rebut the presumption that the adjudicator would be capable of impartiality and create an appearance of impropriety." <u>Id.</u> at *19 (citing <u>In re Conservation District Use Application HA-3568</u>, 143 Hawaiʻi 379, 392, 431 P.3d 752, 765 (2018); <u>Ross</u>, 89 Hawaiʻi at 377, 974 P.2d at 17). Here, based on the materials submitted by Matsuyoshi in support of her recusal motion, and as set out in the Order, Matsuyoshi has not established that the same issue has been raised in both this appeal and <u>Bald</u>, and she has not established that the court's decision in this appeal is likely to have any effect on the plaintiffs' claims in <u>Bald</u>. Thus, with regard to her third contention, Matsuyoshi has not established circumstances that would cause a reasonable person who knows the facts to question Judge Wadsworth's impartiality in this appeal. <u>See Ross</u>, 89 Hawaiʻi at 380, 974 P.2d at 20.

Matsuyoshi argues for the first time in her motion for reconsideration that the same mail delivery issue that she raises in this appeal is present in <u>Lima</u>, another case pending before the federal district court. <u>See Lima</u>, Civ. No. 12-00509 SOM-WRP, 2019 WL 2146585, at *14 (D. Haw. May 16, 2019) (staying further proceedings pending action on a certified question of state law). Her new argument, which could have been raised in her recusal motion, is improper. <u>See Citizens for Equitable & Responsible Gov't</u>, 108 Hawaiʻi at 335, 120 P.3d at 234. Regardless, Matsuyoshi acknowledges that Judge Wadsworth did <u>not</u> represent Defendant Deutsche Bank in <u>Lima</u>. She also does not identify where the 40-page Second Amended Complaint in <u>Lima</u>, which she submits with her motion for reconsideration, raises the same issue as in this appeal. Rather, Matsuyoshi's motion for reconsideration states generally that a question is raised in <u>Lima</u> "whether sales are void because a proper notice of

8

acceleration was not delivered as required by the mortgage[.]" Based on our review of the Second Amended Complaint in Lima, Matsuyoshi appears to be referring to the claims of the proposed Subclass D in Lima, which are: "All members of the Class who received a notice of acceleration that did not inform them of their unconditional right to bring a separate court action to stop the sale." Similar to Paragraph 17.a. of the First Amended Complaint in Bald, the notice of acceleration claim in Lima deals with the *substance* of a notice; whereas the issue in this appeal is whether there was a proper and timely mailing or delivery of a notice to cure default. Thus, even if we consider this new material in resolving Matsuyoshi's current motion, she has not established any circumstances that provide an objective basis for questioning Judge Wadsworth's impartiality in this appeal.

Matsuyoshi also improperly submits with her motion for reconsideration several other documents (and/or document excerpts) filed in various other lawsuits, comprising almost 100 pages, purportedly evidencing Judge Wadsworth's past exposure to the mail delivery issue when he was in private practice. Matsuyoshi's justification for appending these new materials to her motion is unfounded. Her recusal motion can be read to suggest that Judge Wadsworth litigated the mail delivery issue in Bald as counsel for the defendant mortgagee. This suggestion would be incorrect. As explained in the Order, the mail delivery issue was not litigated in Bald during the period Judge Wadsworth represented the defendant mortgagee (nor at any time since). See Order, 2021 WL 640548, at *17. However, Matsuyoshi submits voluminous new materials from other cases, purportedly to counter "[a]ny implication in the Order that the acceleration letter issues raised in Bald were not a matter that [Judge] Wadsworth and his law firm ever faced as advocates . . . ." Even if we consider these new materials, improperly attached to her motion for reconsideration as Exhibits "1" through "5," see Citizens for Equitable & Responsible Gov't, 108 Hawai‘i at 335, 120 P.3d at 234, they do not support disqualification of Judge Wadsworth in

this appeal.  In sum, these new materials do not establish that Judge Wadsworth litigated in <u>Bald</u>, or any other currently pending case in which he was counsel, the same mail delivery issue that Matsuyoshi raises in the present appeal.

We conclude that the Order did not overlook or misapprehend any point of law or fact related to Matsuyoshi's contention that the court's decision in the present appeal "will have real and significant impact on [<u>Bald</u>]" or that Matsuyoshi has otherwise established any circumstances that provide an objective basis for questioning Judge Wadsworth's impartiality in this appeal.

**C.   Recusal of an Appellate Judge**

In her second contention, <u>see</u> <u>supra</u>, Matsuyoshi argues that the Order does not discuss the "significant point" that she is seeking to recuse an appellate judge, whose decisions, unlike those of a trial judge, are binding on other cases raising similar issues.

Initially, we note that Matsuyoshi's motion for recusal, which relied largely on federal case law applying federal recusal standards to <u>trial</u> judges, did not distinguish between the roles of trial and appellate judges.  Nonetheless, it is clear that the applicable rules and case law do not prescribe different recusal standards for trial and appellate judges. Subject to the rule of necessity, both types of judges must recuse themselves "in any proceeding in which the judge's impartiality might reasonably be questioned[.]"  HRCJC Rule 2.11(a); <u>see</u> <u>Ross</u>, 89 Hawaiʻi at 375, 974 P.2d at 15.  Similarly, "[t]he test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired."  <u>Office of Disciplinary Counsel v. Au</u>, 107 Hawaiʻi 327, 338, 113 P.3d 203, 214 (2005) (quoting <u>Ross</u>, 89 Hawaiʻi at 380, 974 P.2d at 20) (brackets omitted).

10

The Order analyzes and applies the relevant standards and case law, including two federal appellate court decisions applying federal recusal standards to <u>appellate</u> judges.  <u>See</u> Order, 2021 WL 640548, at *10-11 (citing <u>Carter v. West Publishing Company</u>, No. 99-11959-EE, 1999 WL 994997, at *9 (11th Cir. Nov. 1, 1999) (Tjoflat, J.); <u>Cipollone v. Liggett Group, Inc.</u>, 802 F.2d 658, 659-60 (3d Cir. 1986) (three-judge panel)).[10] These courts rejected the argument, akin to Matsuyoshi's argument here, that an appellate judge's impartiality might reasonably be questioned based on, respectively, the judge's previous advocacy for a legal or policy position implicated in the pending appeal, <u>see</u> <u>Carter</u>, 1999 WL 994997, at *9, or the judge's prior representation of a client regarding a similar claim and knowledge of legal issues now before the appellate court, <u>see</u> <u>Cipollone</u>, 802 F.2d at 659-60.  In arguing that the Order overlooks the role of an appellate judge, Matsuyoshi ignores these decisions and the analysis in the Order.

We also reject Matsuyoshi's argument that the Order "does not acknowledge that the continued pendency of [Judge Wadsworth's] former case (<u>Bald</u>), which may be affected by his ruling in this case, is a relevant part of the analysis."  This assertion is contradicted by the Order itself, which explicitly analyzes Matsuyoshi's arguments regarding <u>Bald</u> and correctly

---

[10] We note, in addition to <u>Carter</u>, several other examples of decisions in which a federal appellate judge has issued a single-judge order denying a party's motion to recuse that judge:  <u>Duckworth v. Dep't of Navy</u>, 974 F.2d 1140, 1141 (9th Cir. 1992) (Wallace, C.J.) (ruling that chief judge's exposure to underlying facts of case and administrative capacity of handling misconduct complaint were not sufficient grounds for recusal); <u>In re Apex Oil Co.</u>, 981 F.2d 302, 303 (8th Cir. 1992) (Loken, J.) (ruling that judge's prior partnership in law firm that had represented Alaskan fishermen, who had filed claims in oil company's bankruptcy proceeding to recover damages caused by oil spill, did not require judge's recusal in a proceeding brought by another claimant against the oil company to recover on unpaid invoices); <u>United States v. Bonds</u>, 18 F.3d 1327, 1328 (6th Cir. 1994) (Boggs, J.) (ruling that judge's attendance at scholarly conference on forensic uses of DNA did not provide grounds for a reasonable person to question the judge's impartiality, so as to require his recusal from an appeal in a criminal case in which the admissibility of DNA evidence was an issue); <u>Feminist Women's Health Ctr. v. Codispoti</u>, 69 F.3d 399, 400-01 (9th Cir. 1995) (Noonan, J.) (denying motion to recuse based on argument that the judge's "fervently-held" religious beliefs would compromise his ability to apply the law in an abortion-related case).

11

concludes that Matsuyoshi has not established a sufficient relationship between the pending appeal and Bald based on the asserted speculative overlap of the mail delivery issue. See supra; Order, 2021 WL 640548, at *19.

Thus, we conclude that the Order did not overlook or misapprehend any point of law or fact related to Matsuyoshi's contention that she is seeking to recuse an appellate judge, as opposed to a trial judge.

D. "Related Cases" Brought by "Mortgagors' Counsel"

Matsuyoshi contends the Order fails to acknowledge that Judge Wadsworth formerly claimed the "group of cases" being handled by "mortgagors' counsel" were all "directly related" to each other and part of an effort to "rewrite" Hawaiʻi law when Judge Wadsworth was in private practice, and the failure to address these facts is further evidence that would support an objective observer questioning his impartiality. Matsuyoshi points to the answering briefs in Bald and Hungate v. Law Office of David B. Rosen, 139 Hawaiʻi 394, 391 P.3d 1 (2017) submitted by Judge Wadsworth as counsel. Matsuyoshi further asserts that "the Order's effort to obscure . . . the relatedness of all the cases and efforts of their common counsel, . . . call[s] actual bias into question."

However, the Order acknowledges the statements made in the answering brief filed by Judge Wadsworth in the Bald appeal in 2014 regarding related cases. See Order, 2021 WL 640548, at *16. The Order also clarifies that the Bald appeal, as specifically described by the Ninth Circuit, involved allegations that Wells Fargo violated its common law duties by: "(1) advertising in its notice of [nonjudicial foreclosure] sale that only a quitclaim deed would be provided to the winning bidder, despite the fact that it sometimes provided a limited warranty deed; and (2) not publishing notices of postponement of foreclosure auctions." Id. at *5 (quoting Bald appeal, 688 Fed. Appx. at 474.) The Bald appeal thus did not involve the mail

12

delivery issue that has been raised in the present appeal, and Judge Wadsworth's six-year old statements as an advocate informing the Ninth Circuit that a number of cases – none of which included the present case – were "related" or even "directly related" to <u>Bald</u> cannot fairly be read to encompass the mail delivery issue that Matsuyoshi now raises.[11/]  Thus, the Order addresses the issue that Matsuyoshi raised in her recusal motion and seeks to clarify the actual claims in the other nonjudicial foreclosure cases referenced by Matsuyoshi.  At its essence, Matsuyoshi's argument appears to seek Judge Wadsworth's disqualification because the present appeal involves the same general subject matter – <u>i.e.,</u> the alleged failure of mortgagees to comply with their statutory and common law duties in conducting nonjudicial foreclosures – as other cases that Judge Wadsworth litigated from 2012 to 2016 as an attorney in private practice.  The Order acknowledges that similarity in subject matter (<u>id.</u> at *16) and explains, based on the relevant authorities, why that similarity by itself is insufficient to require Judge Wadsworth's recusal (<u>id.</u> at *16-18).

　　　Matsuyoshi also continues to assert that Judge Wadsworth, while an advocate in private practice, "argued that the Bickerton firm was engaged in a multi-case campaign to overturn and seek relief from nonjudicial foreclosures under HRS Chapter 667 Part I."  The answering brief excerpts that Matsuyoshi asserts as supporting disqualification do not identify her current counsel in this case, James J. Bickerton (**Counsel Bickerton**) or his firm, and moreover, do not suggest the apparent animosity or untoward rhetoric that Matsuyoshi would ascribe to

---

[11/]  In the motion for reconsideration, Matsuyoshi also quotes for the first time the answering brief that was filed in <u>Hungate</u> 139 Hawaiʻi 394, 391 P.3d 1, as well as a motion to transfer that appeal to the Hawaiʻi Supreme Court.  Like <u>Bald</u>, <u>Hungate</u> did not involve the mail delivery issue that has been raised in the present appeal.  <u>See generally</u> <u>Hungate</u>, 139 Hawaiʻi at 398-413, 391 P.3d at 5-20.

those comments.[12/]  Rather, the quoted excerpts appear to express the defendant mortgagees' <u>argument</u> (in 2014) that the respective plaintiffs-appellants, through their counsel, were seeking to change Hawaiʻi law regarding nonjudicial foreclosure procedures. Similarly, Matsuyoshi now asserts that as an advocate, Judge Wadsworth "actively engaged in opposing[] *mortgagors' counsel's* <u>*advocacy plan*</u> *to ask state appellate courts to review and decide the legal questions presented in the federal class actions <u>by developing state court cases</u>*."[13/] (Emphasis added.)  Given Matsuyoshi's own description of "mortgagors' counsel's advocacy plan" to "develop" state law on nonjudicial foreclosure issues, we cannot read any pejorative connotation into the defendant mortgagees' 2014 argument, and we cannot conclude that a reasonable person informed of the facts would question Judge Wadsworth's impartiality in the present appeal on that basis. See <u>Arquette</u>, 128 Hawaiʻi at 448-49, 290 P.3d at 518-19 (noting that facts alleged by counsel seeking appellate judge's recusal did not reflect animosity by the judge against counsel and holding the intermediate court of appeals did not abuse its discretion in denying recusal motion); <u>Jou v. Schmidt</u>, 117 Hawaiʻi 477, 484, 184 P.3d 792, 799 (App. 2008) (affirming trial

---

[12/]  For example, Matsuyoshi quotes the following excerpt from the February 8, 2014 answering brief filed in the <u>Bald</u> appeal:  "This putative class action arises out of the non-judicial foreclosures of Plaintiffs-Appellants' mortgages (the "Mortgages") and their counsel's continuing efforts to have this Court and others rewrite Hawaiʻi's non-judicial foreclosure law." As noted in the Order, Counsel Bickerton first appeared as counsel for the plaintiffs-appellants in the <u>Bald</u> appeal on September 1, 2015, over 18 months after the answering brief was filed.  <u>See</u> Order, 2021 WL 640548, at *16.

Matsuyoshi also now quotes a similar statement in the answering brief that was filed in <u>Hungate</u>.  At that time, the law firm of Bickerton Dang LLLP and another law firm had appeared as co-counsel for plaintiff-appellant Hungate.  However, as previously noted, <u>Hungate</u> did not involve the mail delivery issue, and further, Judge Wadsworth's statements as counsel in that case do not reflect any animosity toward Counsel Bickerton or his firm.

[13/]  Matsuyoshi similarly describes "mortgagors' counsel's" "<u>*effort to clarify and develop Hawaii state law*</u>" by "developing individual cases that could be litigated *solely in state court*, in order to have *state appellate courts*, rather than federal courts, *clarify and establish* Hawaii law with respect to each of the rights, duties, and remedies applicable to the thousands of consumers involved in those federal class actions." (First emphasis added).

judge's denial of request for disqualification where party asserted that insurance company involved in the case "has one seat on the nine-member Judicial Selection Commission" and judge was up for retention, and noting that "the sweeping inference" that the trial judge was "ipso facto, biased or prejudiced" was "speculative at best").

Accordingly, we conclude that the Order did not overlook or misapprehend any point of law or fact related to Matsuyoshi's contention that the Order fails to address Judge Wadsworth's previous advocacy in nonjudicial foreclosure cases.

### III.  Conclusion

Based on the above, we therefore deny the motion for reconsideration.

On the motion:                          /s/ Lisa M. Ginoza
                                        Chief Judge
James J. Bickerton,
Bridget G. Morgan-Bickerton,            /s/ Clyde J. Wadsworth
for Defendant-Appellant.                Associate Judge

                                        /s/ Karen T. Nakasone
                                        Associate Judge



# APPENDIX A

**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000696
18-FEB-2021
09:23 AM
Dkt. 122 ORD**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---oOo---

KONDAUR CAPITAL CORPORATION, a Delaware
corporation, Plaintiff-Appellee, v.
LEIGH MATSUYOSHI, Defendant-Appellant,
and
JOHN DOES 1-10, JANE DOES 1-10, DOE
PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10,
DOE ENTITIES 1-10, ALL PERSONS RESIDING WITH
AND ANY PERSONS CLAIMING BY AND THROUGH OR
UNDER THEM, Defendants

NO. CAAP-19-0000696

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 12-1-0185)

FEBRUARY 18, 2021

ORDER DENYING MOTION FOR RECUSAL
OR DISQUALIFICATION BY WADSWORTH, J.[1/]

Defendant-Appellant Leigh Matsuyoshi (**Matsuyoshi**) seeks
my recusal or disqualification in this appeal primarily because,

---

[1/]    Hawaiʻi Rules of Appellate Procedure (**"HRAP"**) Rule 27(c) provides
that "[i]n addition to authority conferred by rule or law, a single judge
. . . may decide any motion before the court on which the judge . . . sits,"
subject to certain exceptions not applicable here.  I decide the pending
motion pursuant to this rule, as well as the Hawaiʻi Supreme Court's repeated
acknowledgment, further discussed below, that "[t]he jurist requested to
recuse himself [or herself] is the most capable to determine those factors
. . . which would bear upon his or her capability to maintain the impartiality
that each matter must receive."  TSA Int'l Ltd. v. Shimizu Corp., 92 Hawaiʻi
243, 252, 990 P.2d 713, 722 (1999) (quoting State v. Ross, 89 Hawaiʻi 371,
375, 974 P.2d 11, 15 (1998)).

several years ago while in private practice, I represented mortgagee banks in litigation arising out of the nonjudicial foreclosure of other borrowers' mortgages. Matsuyoshi asserts Hawai'i Revised Code of Judicial Conduct (**HRCJC**) Rule 2.11(a)[2/]

---

[2/]    HRCJC Rule 2.11(a) states:

       (a) Subject to the rule of necessity, a judge shall disqualify or recuse himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

       (1) The judge has a personal bias or prejudice for or against a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

       (2) The judge knows that the judge, the judge's spouse or domestic partner, or a person within the third degree of relationship to either of them, or the spouse or domestic partner of such a person is:

       (A) a party to the proceeding, or an officer, director, general partner, managing member, or trustee of a party;

       (B) acting as a lawyer in the proceeding;

       (C) a person who has more than a de minimis interest that could be substantially affected by the proceeding; or

       (D) likely to be a witness in the proceeding.

       (3) The judge knows that he or she, individually or as a fiduciary, or the judge's spouse, domestic partner, parent, or child, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or in a party to the proceeding.

       (4) RESERVED.

       (5) RESERVED.

       (6) The judge:

       (A) served as a lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer in the matter during such association;

       (B) served in governmental employment and in such capacity, participated personally and substantially as a lawyer or public official concerning the proceeding, or has publicly expressed in such capacity an opinion concerning the merits of the particular matter in controversy;

(continued...)

as her primary ground for recusal. Under this rule, I must recuse if my impartiality[3] "might reasonably be questioned," including if I "served as a lawyer in the matter in controversy" now before this court, HRCJC Rule 2.11(a)(6)(A), or "was a witness concerning the matter [in controversy,]" id. Rule 2.11(a)(6)(C). Matsuyoshi contends that: (1) my impartiality might reasonably be questioned "given [my] recent practice history"; (2) my former representation of mortgagees in other litigation, including in Bald v. Wells Fargo Bank (**Bald**), Civil No. 13-00135 SOM/KSC, 2013 WL 3864449 (D. Haw. July 25, 2013), concerned "the matter in controversy"; and (3) my February 14, 2014 declaration, filed in support of a request for judicial notice in Bald v. Wells Fargo Bank, N.A. (**Bald appeal**), No. 13-16622, 2017 WL 1433314 (9th Cir. Apr. 24, 2017), rendered me "a witness concerning the matter [in controversy]."

I decline to recuse on these alleged grounds. My former representation of other mortgagees in other nonjudicial foreclosure litigation involving other borrower-mortgagors — representation that ended over four years ago — does not provide an objective basis to question my ability to be impartial in this appeal. While in private practice, I simply acted as an advocate, honoring my professional responsibilities to zealously represent my clients. Further, my former representation is too attenuated from the present appeal to constitute the same "matter in controversy." Matsuyoshi has not established that the issues in Bald or any other case are closely related to the issues raised in this appeal or that I am a witness in the pending

---

[2] (...continued)

                      (C) was a witness concerning the matter; or

                      (D) on appeal, previously presided as a judge over the matter in another court.

(Asterisks omitted.)

[3] The HRCJC defines the term "impartiality" as follows: "'**Impartial**,' '**impartiality**,' and '**impartially**' mean absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that come or may come before a judge." HRCJC, "Terminology."

3

matter, as I have no personal knowledge of any evidentiary facts in the matter. Similarly, my former law firm colleagues withdrew as counsel for the defendant-mortgagee in Bald over two years ago. Therefore, I conclude that HRCJC 2.11(a) does not require my recusal in this appeal.

Matsuyoshi further contends that I must recuse because the same factors that purportedly require my recusal under HRCJC Rule 2.11(a), create "an appearance of impropriety"[4] that compels my recusal under HRCJC Rule 1.2.[5] I also decline to recuse on this alleged ground. In light of the above facts, which are elaborated below, Matsuyoshi has failed to establish that a reasonable person, knowing all the facts, "would perceive as materially impaired [my] independence, integrity, impartiality, temperament, or fitness to fulfill [my judicial] duties" with respect to this appeal. HRCJC, "Terminology" (defining "[a]ppearance of impropriety").

As further explained below, "[Matsuyoshi's] Motion for Recusal or Disqualification of Judge Clyde J. Wadsworth," filed on December 21, 2020, is denied.

## I. Background

### A. The Appeal Before This Court

This case has a long and complex procedural history that I need not detail here. The Hawaiʻi Supreme Court's published opinion in Kondaur Capital Corp. v. Matsuyoshi, 136 Hawaiʻi 227, 230-35, 361 P.3d 454, 457-62 (2015), provides a thorough explication of the factual and procedural background of the case prior to late-2015.

In brief, Jun Matsuyoshi and others conveyed a residential property located in Līhuʻe, Kauaʻi (**Property**) by

---

[4]  "'**Appearance of impropriety**' means conduct that reasonable minds, with knowledge of all the relevant circumstances, would perceive as materially impairing the judge's independence, integrity, impartiality, temperament, or fitness to fulfill the duties of judicial office." HRCJC, "Terminology."

[5]  HRCJC Rule 1.2 states: "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety." (Asterisks omitted.)

warranty deed to Matsuyoshi in February 2007.  Id. at 230, 361 P.3d at 457.  The following month, Matsuyoshi signed a mortgage on the Property (**Mortgage**) and a promissory note (**Note**) promising to pay $500,000 to Resmae Mortgage Corporation (**Resmae**) in return for a loan that Matsuyoshi had received.  Id.  Matsuyoshi allegedly defaulted under the loan, and pursuant to the power of sale in the Mortgage and Hawaii Revised Statutes (**HRS**) Chapter 667, Part I, Resmae's assignee, Resmae Liquidation Properties LLC (**RLP**), foreclosed on the Mortgage.  Id.  On November 13, 2008, RLP, now the mortgagee, bought the Property for $416,900.20 at a nonjudicial foreclosure public auction held in Honolulu.  Id.  In July 2010, a quitclaim deed was executed by RLP conveying the Property to Plaintiff-Appellee Kondaur Capital Corp. (**Kondaur**). Id.

On June 5, 2012, Kondaur filed a complaint for possession of the Property against Matsuyoshi in the Circuit Court of the Fifth Circuit (**circuit court**), which is the case underlying this appeal.  Id. at 231, 361 P.3d at 458.  On September 18, 2012, the circuit court entered judgment in favor of Kondaur on its motion for summary judgment.  Id. at 232, 361 P.3d at 459.  Kondaur appealed; this court vacated the judgment below; on certiorari review, the Hawaiʻi Supreme Court vacated this court's judgment on appeal; and, thereafter, this court ruled that summary judgment in favor of Kondaur was appropriate, and affirmed the circuit court's judgment.  See id. at 232-34, 361 P.3d at 459-61.

The Hawaiʻi Supreme Court granted certiorari and issued its published opinion on November 23, 2015.  In that opinion, the supreme court clarified that "the duties set forth in Ulrich[ v. Security Inv. Co., 35 Haw. 158 (Haw. Terr. 1939),] remain viable law and are applicable to non-judicial foreclosures of real property mortgages."  Id. at 229, 361 P.3d at 456.  As the court stated:

> Ulrich requires mortgagees to exercise their right to
> non-judicial foreclosure under a power of sale in a
> manner that is fair, reasonably diligent, and in good
> faith, and to demonstrate that an adequate price was
> procured for the property.  In instances where the
> mortgagee assumes the role of a purchaser in a
> self-dealing transaction, the burden is on the

5

> mortgagee, or its quitclaim transferee or non-bona
> fide successor, to establish its compliance with these
> obligations. Its failure to do so would render the
> foreclosure sale voidable and could therefore be set
> aside at the timely election of the mortgagor.

Id. at 240, 361 P.3d at 467 (citations and footnotes omitted).

Thus, where, as here, the mortgagee is the purchaser in a nonjudicial foreclosure sale, the mortgagee has the "burden to prove in the summary judgment proceeding that the foreclosure 'sale was regularly and fairly conducted in every particular.'" Id. at 241, 361 P.3d at 468 (quoting Ulrich, 35 Haw. at 168). Because RLP had failed to satisfy its initial burden of showing that the nonjudicial foreclosure sale had been conducted in a manner that was fair, reasonably diligent, in good faith, and would obtain an adequate price for the property, the mortgagor did not have to raise a genuine issue of material fact. Id. Thus, the supreme court vacated the summary judgment ruling and remanded the case to the circuit court for further proceedings. Id. at 244, 361 P.3d at 471.

Following remand, the circuit court conducted a bench trial on May 29 and 30, 2018.[6] On March 15, 2019, the court entered: (1) Findings of Fact and Conclusions of Law After Trial (**FOFs/COLs**); (2) a Writ of Ejectment; and (3) Final Judgment in favor of Kondaur and against Matsuyoshi. Kondaur subsequently filed a motion to tax costs and expenses and for an award of attorneys' fees. On September 11, 2019, the circuit court entered an order granting the motion and awarding Kondaur attorneys' fees and costs in the respective amounts of $140,600.61 and $10,536.77. This appeal followed.

On January 17, 2020, Kondaur filed a motion to dismiss the appeal for lack of jurisdiction, contending that the appeal was untimely. This court denied the motion on April 7, 2020.

Matsuyoshi filed her opening brief on June 17, 2020. She raises numerous points of error concerning the circuit court's written FOFs, oral findings of fact, COLs, other pretrial and trial rulings, and the grant of Kondaur's fees and costs motion. In sum, Matsuyoshi makes the following arguments:

---

[6] The Honorable Randal G.B. Valenciano presided.

A.    The Lower Court Erred In Ruling, Without Substantial Evidence, That A Sale On Oahu Satisfied RLP's Duty To Use Diligent Efforts To Obtain The Best Price, and That There Was Adequate Publicity and Opportunity for Inspection By Bidders

B.    There Was No Substantial Evidence to Support a Finding That The Auction Sale Price to RLP Was "Adequate"

C.    The Lower Court Prejudicially Erred In Admitting The Affidavit of Foreclosure. . ., the Motion for Summary Judgment. . ., and the County Tax Assessment Webpage. . . .

D.    There Was No Substantial Evidence and No Evidence At All To Support the Finding That The Notice of Default and Acceleration Was Delivered To or Received By Matsuyoshi At Least 30 days before the Stated Deadline to Cure

E.    The Lower Court Prejudicially Erred In Refusing To Take Judicial Notice That the *Honolulu Star-Bulletin* Ceased To Be Circulated on Kauai in 2004, and There Was In Any Event No Substantial Evidence and No Evidence At All To Support the Finding That the *Honolulu Star-Bulletin* Was a Newspaper "Having A General Circulation In The County In Which The Mortgaged Property Lies"

F.    The Lower Court Reversibly Erred In Awarding Fees and Costs

G.    The Lower Court Erred In Entering Judgment Against Matsuyoshi on Her Counterclaim for Quiet Title

As relevant to the current motion, Matsuyoshi further argues in part on appeal, with respect to argument D above, the following:

> Under Paragraph 22 of the Mortgage, RLP could not foreclose unless it had given Matsuyoshi 30 days' notice to cure. The record shows that RLP failed to do this, since it sent the notice by "certified mail, return receipt requested" from Kansas on May 20, 2008 giving only until June 20 to cure. Because it was not sent by "first class mail," RLP and Kondaur receive no "deeming" of delivery on the mailing date under Paragraph 15 of the Mortgage and must prove actual delivery. The Affidavit of Foreclosure does not prove any delivery and no witness testified to any. Indeed, the only reasonable inference from the evidence is that the notice was not received on Kauai by May 21, a day after it was mailed from Kansas, given that a court can take judicial notice that mail from the Mid-West to a Hawaii neighbor island takes more than one day to arrive.

I refer to this argument below as the "mail delivery issue."

After the conclusion of briefing, this appeal was assigned randomly to the current three-judge merit panel pursuant to notice filed on November 9, 2020. On December 21, 2020, Matsuyoshi filed the present motion for recusal or

7

disqualification. On December 28, 2020, Kondaur filed its opposition to the motion.

## B. My Prior Representation of Mortgagees

Before entering government service in January 2017, I was employed as "of counsel" by the law firm Alston Hunt Floyd & Ing (**AHFI**), where I practiced law for more than ten years.[7] My practice focused primarily on commercial litigation and appellate law, but I also took on *pro bono* civil rights cases for individual clients. Several of the firm's partners had expertise in real estate litigation, including in representing mortgagees and other parties in judicial and nonjudicial foreclosure actions. Starting in about 2013, I began working with my then-colleagues on some of these cases on behalf of the firm's clients, including Wells Fargo Bank, N.A. (**Wells Fargo**). My employment with AHFI and my representation of its clients, including its mortgagee clients, ended in December 2016.

I have never represented any party in the appeal now before this court at any stage of the litigation, and I have no personal knowledge of any of the evidentiary facts in this case.

## C. <u>Bald</u> and the <u>Bald</u> Appeal

While employed with AHFI, one of the cases I worked on, starting in 2013, was <u>Bald</u>, and starting in 2014, the <u>Bald</u> appeal. The United States Court of Appeals for the Ninth Circuit described <u>Bald</u> as follows:

> In this putative class action,[8] David Emory Bald and Emily Lelis (collectively, Plaintiffs) contend that defendant Wells Fargo . . . violated [HRS] § 480-2 in connection with the nonjudicial foreclosure sales of Plaintiffs' homes. HRS § 480-2(a) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce," including acts that violate common law duties. Plaintiffs allege that Wells Fargo violated its common law duty to exercise its power of sale in a manner that does not unreasonably damage the debtor by (1) advertising in its notice of sale that only a quitclaim deed would be provided to the winning

---

[7] Prior to joining AHFI, I practiced law for more than twenty years in California.

[8] Bald is a putative class action, but no class has been certified to date.

> bidder, despite the fact that it sometimes provided a limited warranty deed; and (2) not publishing notices of postponement of foreclosure auctions.
>
> The [federal] district court granted Wells Fargo's motion to dismiss, holding that the Hawaii foreclosure statute did not prescribe the form of deed to be offered and allowed postponement via oral announcement, and that the Hawaii common law duty of a mortgagee to not unnecessarily injure the debtor did not apply.

Bald appeal, 2017 WL 1433314, at *1 (footnote added; citation omitted).

On April 24, 2017, four months after I ceased representing Wells Fargo and following the Hawaiʻi Supreme Court's decision in Hungate v. Law Office of David B. Rosen, 139 Hawaiʻi 394, 391 P.3d 1, 17 (2017), the Ninth Circuit reversed the federal district court's decision granting Wells Fargo's motion to dismiss and remanded the case to the district court for further proceedings. Bald appeal, 2017 WL 1433314, at *3.

On June 7, 2017, Matsuyoshi's current counsel in this case, James J. Bickerton (**Counsel Bickerton**), first appeared as counsel for the plaintiffs in Bald.[9] On November 27, 2017, the plaintiffs in Bald filed their First Amended Complaint.

On July 2, 2018, the law firm Dentons announced its combination with AHFI. At least in name, AHFI ceased to exist. On January 17, 2019, my former colleagues at AHFI, now partners at Dentons, withdrew as counsel, and new counsel appeared, for Wells Fargo.

On May 16, 2019, the federal district court issued an "Order Certifying A Question To The Hawaiʻi Supreme Court" in Bald and two other pending cases raising similar issues. Lima v. Deutsche Bank Nat'l Trust Co., Civ. Nos. 12-00509 SOM-WRP, 12-00514 SOM-WRP, and 13-00135 SOM-RT, 2019 WL 2146585 (D. Haw. May 16, 2019). The question was:

> When (a) a borrower has indisputably defaulted on a mortgage for real property, (b) a lender has conducted a nonjudicial foreclosure sale but has not strictly complied with the requirements governing such sales, and (c) the borrower sues the lender over that noncompliance after the foreclosure sale and, if the property was purchased at foreclosure by the lender, after any subsequent sale to a third-party

---

[9] Counsel Bickerton first appeared as counsel for the plaintiffs-appellants in the Bald appeal on September 1, 2015.

> purchaser, may the borrower establish the requisite harm for liability purposes under the law of wrongful foreclosure and/or section 480-2 of Hawaiʻi Revised Statutes by demonstrating the loss of title, possession, and/or investments in the property without regard to the effect of the mortgage on those items?

Id. at *1.

The district court explained the procedural developments following remand from the Ninth Circuit, in relevant part, as follows:

> The amended complaints . . . added new plaintiffs, and added other practices that Defendant Banks had allegedly wrongfully engaged in during the nonjudicial foreclosure proceedings. . . . .
>
> In their amended complaints, Plaintiff Borrowers now assert: (1) a tort claim for wrongful foreclosure, and (2) a UDAP claim under section 480-2.
>
> . . . .
>
> Defendant Banks in each case filed motions for summary judgment, arguing, among other things, that Plaintiff Borrowers' claims fail because they cannot prove the harm element of either their wrongful foreclosure claim or their section 480-2 claim. . . .
>
> Plaintiff Borrowers respond that evidence that each Plaintiff Borrower lost title, possession, and the value of investments in that Plaintiff Borrower's property is sufficient to survive summary judgment. Plaintiff Borrowers argue that they were harmed by the loss of title and possession of the properties that they had before Defendant Banks foreclosed. . . .

Id. at *4-*5 (citations and footnotes omitted).

The district court further explained:

> If the Hawaiʻi Supreme Court concludes that the effect of a mortgage must be considered in determining whether a borrower establishes the harm element of a prima facie liability case for wrongful foreclosure or a section 480-2 claim, this court anticipates granting summary judgment for Defendant Banks because Plaintiff Borrowers' only evidence of harm relates to the loss of title, possession, and investments in the properties without regard to any mortgage. A grant of summary judgment on these grounds would dispose of all claims.
>
> If the Hawaiʻi Supreme Court arrives at a different conclusion, that ruling will not dispose of the cases. Instead, this court will need to address the remaining arguments in Defendant Banks' motions for summary judgment, as well as the issues in motions to dismiss filed by Deutsche Bank and U.S. Bank. Wells Fargo has also filed a separate motion for partial summary judgment. These motions are substantial and together raise dozens of complicated and often related issues. . . . .

Id. at *6 (citations omitted).

The district court ordered, among other things: "Further proceedings in this court are stayed pending action by the Hawai'i Supreme Court." Id. at *14

On June 13, 2019, the Hawai'i Supreme Court ordered, among other things, that the parties file briefs in the certified-question proceeding. See Lima v. Deutsche Bank Nat'l Trust Co., No. SCCQ-19-0000397, Judiciary Information Management System (**JIMS**) dkt. 12. The parties did so, and the matter is currently pending before the supreme court.

## II. Discussion

### A. Legal Framework

We honor a foundational principle of our judicial system: "The integrity of the judicial process depends on 'justice ... satisfy[ing] the appearance of justice.'" Ross, 89 Hawai'i at 381, 974 P.2d at 21 (quoting State v. Brown, 70 Haw. 459, 467, 776 P.2d 1182, 1188 (1989)); see Mauna Kea Anaina Hou v. Bd. of Land & Nat. Res., 136 Hawai'i 376, 389, 363 P.3d 224, 237 (2015) ("[J]ustice can perform its high function in the best way only if it satisfies the appearance of justice." (quoting Sifagaloa v. Bd. of Trs. of Emps. Ret. Sys., 74 Haw. 181, 189, 840 P.2d 367, 371 (1992))). "Our judicial system, however, also rests on the premise that 'the law will not suppose a possibility of bias or favour in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea.'" Ross, 89 Hawai'i at 381, 974 P.2d at 21 (quoting Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 820 (1986) (quoting 3 W. Blackstone, Commentaries 361)). "While the principle that 'justice must satisfy the appearance of justice' exhorts judges to 'hold the balance nice, clear and true,' it does not invite any party concerned about or dissatisfied with the outcome of a case to seek a different judge." Id. at 381, 974 P.2d at 21 (quoting Aetna Life Ins. Co., 475 U.S. at 822); TSA Int'l Ltd., 92 Hawai'i at 255, 990 P.2d at 725 (quoting Ross); see also Belue v. Leventhal, 640 F.3d 567, 574 (4th Cir. 2011) ("[R]ecusal decisions 'reflect not only the need to secure public confidence through proceedings that appear impartial, but

11

also the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking.'"(quoting In re United States, 441 F.3d 44, 67 (1st Cir. 2006))).

Accordingly, the Hawai'i Supreme Court has made clear that

> a judge owes a <u>duty not to withdraw</u> from a case — however-much his personal feelings may incline him to do so — where the circumstances do not *fairly* give rise to an appearance of impropriety and do not *reasonably* cast suspicion on his [or her] impartiality.

Ross, 89 Hawai'i at 377, 974 P.2d at 17 (first emphasis added) (quoting Brown, 70 Haw. at 467 n.3, 776 P.2d at 1188 n.3); TSA Int'l Ltd., 92 Hawai'i at 254, 990 P.2d at 724) (quoting Ross). See HRCJC Rule 2.7 ("A judge shall hear and decide matters assigned to the judge, except when disqualification or recusal is required or permitted by Rule 2.11 or other law.") (asterisk omitted); id. Comment 1 ("Unwarranted disqualification or recusal may bring public disfavor to the court and to the judge personally.").

The court evaluating a claim of judicial bias thus starts with the premise that judges are presumed to be unbiased. See Ross, 89 Hawai'i at 381, 974 P.2d at 21; see also In re Conservation District Use Application HA-3568, 143 Hawai'i 379, 392, 431 P.3d 752, 765 (2018) ("[A]dministrative adjudicators are held to the same standard as judges . . . [and] like judges, administrators serving as adjudicators are presumed to be unbiased.") (citing Sifagaloa, 74 Haw. at 192, 840 P.2d at 372). This presumption can be rebutted by a showing of a disqualifying interest, "[b]ut the burden of establishing a disqualifying interest rests on the party making the assertion." Sifagaloa, 74 Haw. at 192, 840 P.2d at 372.[10]

---

[10] Similarly, the moving party bears the burden of establishing the grounds for recusal under parallel federal law. See Am. Prairie Constr. Co. v. Hoich, 594 F.3d 1015, 1021 (8th Cir. 2010) (affirming denial of recusal under 28 U.S.C. § 455(a) and (b)(1); stating that "[a] judge is presumed to be impartial, and the party seeking disqualification bears the substantial burden of proving otherwise") (internal quotation marks omitted); see also Philip Morris USA, Inc. v. United States Food & Drug Admin., 156 F. Supp. 3d 36, 43 (D.D.C. 2016) (stating that "[t]he moving party bears the burden of

(continued...)

The supreme court also has recognized that "[d]ecisions on recusal or disqualification present perhaps the ultimate test of judicial discretion . . . ." TSA Int'l Ltd., 92 Hawaiʻi at 252, 990 P.2d at 722. Accordingly:

> The jurist requested to recuse himself [or herself] is the most capable to determine those factors hidden in the recesses of the mind and soul which would bear upon his or her capability to maintain the impartiality that each matter must receive[.]

Id. (quoting Ross, 89 Hawaiʻi at 375, 974 P.2d at 15 (quoting Goodheart v. Casey, 565 A.2d 757, 763 (Pa. 1989))) (original brackets omitted).

While I am confident that I can maintain my impartiality in this appeal, the court applies an objective standard to questions of recusal and disqualification (see infra), and I thus do so in the analysis below.

Hawaiʻi courts apply a two-part analysis in disqualification or recusal cases. See Ross, 89 Hawaiʻi at 377, 974 P.2d at 17. This court has elaborated as follows:

> First, courts determine whether the alleged bias is covered by HRS § 601-7,[11] which only pertains to cases of affinity

---

[10] (...continued) establishing the grounds for recusal under [28 U.S.C. § ]455(b)(2)."); E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 847 F. Supp. 2d 843, 857 (E.D. Va. 2012) (stating that it is the burden of "the party moving for recusal under § 455(b)[] to demonstrate that the presiding judge or one of his former law partners 'served in the matter in controversy.'").

[11] HRS § 601-7 (2016) provides:

> (a) No person shall sit as a judge in any case in which:
>
> > (1) The judge's relative by affinity or consanguinity within the third degree is counsel, or interested either as a plaintiff or defendant, or in the issue of which the judge has, either directly or through such relative, a more than de minimis pecuniary interest; or
> >
> > (2) The judge has been of counsel or on an appeal from any decision or judgment rendered by the judge;
>
> provided that no interests held by mutual or common funds, the investment or divestment of which are not subject to the direction of the judge, shall be considered pecuniary interests for purposes of this section; and after full disclosure on the record, parties may waive disqualification due to any pecuniary interest.

(continued...)

or consanguinity, financial interest, prior participation, and actual judicial bias or prejudice. [Ross, 89 Hawai'i at 377, 974 P.2d at 17]; [HRS] § 601-7. This first step refers to judicial "disqualification." See [HRCJC] Rule 2.11 Code Comparison (2008) (in Hawai'i jurisprudence, the terms "disqualification" and "recusal" are not synonymous); Report and Recommendation of the Committee to Evaluate Hawaii's Revised Code of Judicial Conduct 1, 7 (April 10, 2008) . . . ("disqualification" refers to "disqualification pursuant to HRS § 601-7 due to kinship, pecuniary interest, prior involvement, personal bias or prejudice").

Second, if HRS § 601-7 does not apply, courts "may then turn, if appropriate, to the notions of due process . . . in conducting the broader inquiry of whether 'circumstances . . . fairly give rise to an appearance of impropriety and . . . reasonably cast suspicion on [the judge's] impartiality.'" Ross, 89 Hawai'i at 377, 974 P.2d at 17 (brackets and ellipses in original) (quoting State v. Brown, 70 Haw. 459, 467 n.3, 776 P.2d 1182, 1188 n.3 (1989)). A judge who ceases participating because of due-process concerns "recuses" him or herself. 2008 RCJC Report at 7 (under Ross, "recusal" refers to "disqualification outside HRS § 601-7 due to the appearance of impropriety").

Chen v. Hoeflinger, 127 Hawai'i 346, 361, 279 P.3d 11, 26 (2012) (footnote added).

With these principles in mind, I address Matsuyoshi's arguments in turn.

## B. Disqualification Under HRS § 601-7

"To disqualify a judge based on HRS § 601-7(b), the movant must timely file an affidavit 'stat[ing] the facts and reasons for the belief that bias or prejudice exists.'" TSA Int'l Ltd., 92 Hawai'i at 254, 990 P.2d at 724.

---

[11]/ (...continued)
(b) Whenever a party to any suit, action, or proceeding, civil or criminal, makes and files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against the party or in favor of any opposite party to the suit, the judge shall be disqualified from proceeding therein. Every such affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be filed before the trial or hearing of the action or proceeding, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one affidavit; and no affidavit shall be filed unless accompanied by a certificate of counsel of record that the affidavit is made in good faith. Any judge may disqualify oneself by filing with the clerk of the court of which the judge is a judge a certificate that the judge deems oneself unable for any reason to preside with absolute impartiality in the pending suit or action.

Here, Matsuyoshi cites HRS § 601-7(b) in the first sentence of her motion, but never refers to the statute again in her motion or supporting memorandum, and does not argue a statutory ground for disqualification.  The argument is thus deemed waived.  See HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").  Moreover, Matsuyoshi did not file an affidavit supporting her motion, as required by HRS § 601-7(b).  See TSA Int'l Ltd., 92 Hawaiʻi at 254, 990 P.2d at 724.  Accordingly, Matsuyoshi has not established a statutory basis for disqualification under HRS § 601-7(b).

## C.    Recusal Under HRCJC Rule 2.11(a)

As relevant to Matsuyoshi's recusal motion, HRCJC Rule 2.11(a) states:

> Subject to the rule of necessity, a judge shall disqualify or recuse himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
>
> . . . .
>
> (6) The judge:
>
> (A) served as a lawyer in the matter in controversy . . . ;
>
> . . . .
>
> (C) was a witness concerning the matter[.]

(Asterisks omitted.)

This court applies an objective standard to the question of whether a judge's impartiality might reasonably be questioned under the circumstances of a particular case.  See Ross, 89 Hawaiʻi at 380, 974 P.2d at 20.  That standard requires the court to ask the following:

> Would a reasonable person, knowing all the facts, conclude that the . . . judge's impartiality could reasonably be questioned?  Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?

Id. (quoting United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992)).  Importantly, a reasonable observer must assume that judges are ordinarily capable of setting aside their own

15

interests and adhering to their sworn commitments "to administer impartial justice," Ross, 89 Hawai'i at 381, 974 P.2d at 21, and to "faithfully discharge [their] duties . . . to the best of [their] abilit[ies]," Haw. Const. art. XVI, § 4.  See Armenian Assembly of America, Inc. v. Cafesjian, 783 F. Supp. 2d 78, 91 (D.D.C. 2011) (construing parallel federal law).

Matsuyoshi contends that my recusal is required:  (1) under HRCJC Rule 2.11(a), because my impartiality might reasonably be questioned "given [my] recent practice history"; (2) under HRCJC Rule 2.11(a)(6)(A), because I "served as a lawyer in the matter in controversy" by virtue of my prior representation of mortgagees in other cases; and (3) under Rule 2.11(a)(6)(C), because I became "a witness concerning the matter [in controversy,]" by filing a declaration in the Bald appeal seven years ago.

I examine each of these contentions in turn below.

## 1. Recusal Under HRCJC Rule 2.11(a) Based on Prior Representation of Mortgagees

Matsuyoshi first argues that my impartiality might reasonably be questioned because of my "recent practice history" – which she acknowledges is over four years old – representing mortgagees in other nonjudicial foreclosure litigation.  She cites no Hawai'i case law supporting her position, and this court has found none.  Indeed, Matsuyoshi cites no authority at all in which a judge recused him or herself based merely on having previously litigated the same or similar issues coming before the court, or on having represented parties taking positions adverse to the party seeking recusal.

Federal authorities, interpreting a federal statute that contains terms similar in many (though not all) respects to the HRCJC, and that mandates recusal where a judge's impartiality "might reasonably be questioned," see 28 U.S.C. § 455 (1990),[12/]

_____

[12/]    28 U.S.C. § 455(a)-(b) provides:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(continued...)

do not support Matsuyoshi's argument. "Courts have uniformly rejected the notion that a judge's previous advocacy for a legal, constitutional, or policy position is a bar to adjudicating a case, even when that position is directly implicated in the case before the court." Carter v. West Publishing Company, No. 99-11959-EE, 1999 WL 994997, at *9 (11th Cir. Nov. 1, 1999) (Tjoflat, J.) (citing numerous cases). See also Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n, No. 14 Civ. 2590 (VM)(RWL), 2018 WL 559158, at *3 (S.D.N.Y. Jan. 9, 2018) (denying recusal where judge had prior experience litigating residential mortgage backed security (**RMBS**) cases); Pauley v. United States, No. 3:12-CV-

---

12/ (...continued)

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity, participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

08558, 2013 WL 6190034, at *3 (S.D.W. Va. Nov. 26, 2013) (denying recusal where judge had prior experience working with physicians and hospitals defending medical negligence matters); Fifty-Six Hope Road Music Ltd. v. UMG Recordings, Inc., No. 08 Civ. 6143 (KBF), 2011 WL 5825321, at *2 (S.D.N.Y. Nov. 16, 2011) (denying recusal where judge had prior experience litigating digital music issues); Biro v. Condé Nast, No. 11 CV 4442 (JPO), 2011 WL 5109445, at *2 (S.D.N.Y. Oct. 27, 2011) (denying recusal where judge had experience litigating defamation cases on behalf of large media companies); Greater New York Mut. Ins. Co. v. North River Ins. Co., Civ. A. Nos. 94-5223, 94-5554, 1995 WL 214410, at *1 (E.D. Pa. Apr. 10, 1995) (denying recusal where judge had prior experience litigating insurance issues).

In Royal Park Investments, for example, the court denied a request for recusal brought under 28 U.S.C. § 455(a). 2018 WL 559158, at *3. There, the defendant bank argued that the judge's "impartiality might reasonably be questioned" in part because, from 2000 to 2016, while in private practice, the judge had litigated RMBS cases on behalf of plaintiffs advocating positions on issues that were likely to arise in the case before the court. Id. at *1-2. After considering the relevant authorities, the court concluded: "The fact that I have litigated RMBS cases on behalf of plaintiffs addressing the same or similar issues that are likely to arise in this case also provides no basis for recusal." Id. at *3. "Were it otherwise," the court reasoned, "no Assistant United States Attorney who prosecuted narcotics criminals could become a judge presiding over criminal narcotics cases, and no personal injury lawyer could become a judge presiding over tort cases." Id. The court continued: "There is no basis to believe my 'impartiality might reasonably be questioned' simply because I am knowledgeable about certain aspects of the [RMBS] industry or [RMBS, sampling and other] issues more generally." Id. (alteration in original) (quoting Fifty-Six Hope Road Music, 2011 WL 5825321, at *2).

In reaching this conclusion, the court relied in part on Cipollone v. Ligget Group, Inc., 802 F.2d 658, 659-60 (3d. Cir. 1986). See Royal Park Invs., 2018 WL 559158, at *3. In Cipollone, the Third Circuit rejected the argument that a judge's

impartiality might reasonably be questioned in a products liability action because of his knowledge of the issues, gained while in private practice.  The court stated:

> [P]rior knowledge about legal issues is not a ground for recusal of a Judge. . . .  [The moving party] does not assert that Judge Hunter has knowledge of evidentiary facts. If judges could be disqualified because their background in the practice of law gave them knowledge of the legal issues which might be presented in cases coming before them, then only the least-informed and worst-prepared lawyers could be appointed to the bench.

802 F.2d at 659-60.  See Greater New York Mut. Ins. Co., 1995 WL 214410, at *3 ("My only prior experience is with the legal issues presented by these cases. . . . [T]his is simply not a basis for recusal.  Otherwise, the more legal knowledge or experience a judge has, the fewer cases he or she could hear.")

These authorities make clear that my previous advocacy on behalf of mortgagees in other nonjudicial foreclosure litigation is not a proper basis for my recusal.  That is so regardless of any alleged similarity between the issues I litigated while in private practice and the issues raised in this appeal (see cases cited supra), though as further discussed below, Matsuyoshi has not established more than an attenuated connection between the former and the latter issues.  I have no personal knowledge of any evidentiary facts in this case. Accordingly, my prior "practice history" does not provide an objective basis to believe that my impartiality might *reasonably* be questioned.

Lacking authority for her position, Matsuyoshi relies on the rhetoric of armed conflict.  She describes "a broad scale campaign in a multi-front 'war' between classes of consumers and multiple banks that spanned several years," and asserts that I "was not just a foot-soldier in that war[, . . . but] a commanding general[.]"  Ultimately, though, Matsuyoshi's argument comes down to this assertion:  "The record shows strong and vigorous advocacy, and firm disagreements with the positions of the mortgagors" in cases I litigated.

Assuming that is so, Matsuyoshi still has not explained why a judge who previously represented clients in other matters while in private practice must be disqualified simply because, as an advocate, he fulfilled his professional responsibilities to

zealously represent those clients. See Hungate, 139 Hawaiʻi at 413, 391 P.3d at 20 ("Attorneys bear a duty to zealously represent clients 'within the bounds of the law." (quoting Giuliani v. Chuck, 1 Haw. App. 379, 384, 620 P.2d 733, 737 (1980))); Hawaiʻi Rules of Professional Conduct, "Preamble," ¶ 2 ("As advocate, a lawyer zealously asserts the client's position under the Rules of the adversary system."), ¶ 8, ¶ 9. Nor has Matsuyoshi supplied any authority requiring recusal based on the strength and vigor of a current judge's prior advocacy as a litigator. Cf. Greater New York Mut. Ins. Co., 1995 WL 214410, at *3 (denying recusal where the movant argued that the judge, in his prior experience, was "instrumental in the development of a novel legal theory" upon which he subsequently based a judicial decision). Matsuyoshi's argument also wrongly conflates the lawyer's professional role with his or her personal beliefs. See Philip Morris USA Inc., 156 F. Supp. 3d at 49 ("Reasonable, well-informed observers . . . understand that lawyers personally, and law firms as institutions, do not necessarily agree or identify with their clients' actions or interests. After all, lawyers and law firms advocate for clients, even when their clients' interests conflict with their own personal beliefs. That is the hallmark of lawyering.")

In sum, my prior representation of mortgagees is more than four years old. While in private practice, I zealously represented my clients, both plaintiffs and defendants, within the bounds of the law. The case law demonstrates that this circumstance is not disqualifying. On this record, Matsuyoshi has failed to establish that a reasonable person, knowing all the facts, would conclude that my impartiality in the current appeal could reasonably be questioned due to my prior "practice history."

## 2. Recusal Under HRCJC Rule 2.11(a)(6)(A)

Matsuyoshi next argues that my recusal is required under HRCJC Rule 2.11(a)(6)(A), because I served as a lawyer in "the matter in controversy" as a result of my prior representation of mortgagees in other cases, including Bald.

Whether this rule requires my recusal depends on whether the legal services that I provided in these other cases concern "the matter in controversy" that is now before this court.

### a.    Definition of "Matter in Controversy"

HRCJC Rule 2.11(a)(6)(A) states in part that "a judge shall disqualify or recuse himself or herself in any proceeding in which . . . [t]he judge . . . served as a lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer in the matter during such association[.]"  (Emphasis added.)  The HRCJC does not expressly define the phrase "matter in controversy" or what appears to be the shorthand reference, "matter."  HRCJC Rule 2.11 is based, with modifications, on American Bar Association Model Code of Judicial Conduct (**ABA Model Code**) Rule 2.11.  See HRCJC Rule 2.11, "Code Comparison."  However, the ABA Model Code does not expressly define the terms at issue.  Nor have the Hawai'i appellate courts opined on the meaning of these terms.

Based on certain federal authorities that have construed the phrase "matter in controversy" under 28 U.S.C. § 455(b), Matsuyoshi urges this court to adopt a broad reading of the same phrase under Hawai'i law.  Indeed, Matsuyoshi's sweeping argument would effectively define "matter in controversy" to encompass not only the case before the court, but also other cases involving similar legal issues that a judge litigated while in private practice, apparently limited only by the extent and zeal of his or her prior advocacy on those issues.  In advancing this expansive definition, however, Matsuyoshi overlooks important distinctions between HRCJC Rule 2.11 and 28 U.S.C. § 455(b) regarding the terms at issue.

For example, while the HRCJC does not define the phrase "matter in controversy," it *does*, unlike parallel federal law, define the terms "pending matter" and "impending matter."  A "'[p]ending matter' is a matter that has commenced.  A matter continues to be pending through any appellate process until final

21

disposition.  See [HRCJC] Rules 2.9, 2.10, 3.13, and 4.1."[13]/
HRCJC, "Terminology" (emphasis and underscoring added).  As used
in the definition of "pending matter" and the cited rules, the
term "matter" appears to refer to a case (which will have a
"final disposition") before the court, not other cases involving
the same or similar issues.  See, e.g., HRCJC Rule 2.9(a) ("A
judge shall not initiate, permit, or consider ex parte
communications, or consider other communications made to the
judge outside the presence of the parties or their lawyers,
concerning a pending* or impending matter* . . . . (denoting
defined terms with asterisks)).  Nevertheless, it is not clear
that this contextual definition of "matter" was intended to apply
to the terms "matter in controversy" and "matter" in HRCJC Rule
2.11, as the definition of "pending matter" does not reference
Rule 2.11, and the terms "matter in controversy" and "matter" in
Rule 2.11 are not followed by asterisks, which denote defined
terms in the HRCJC.[14]/

 Focusing on HRCJC Rule 2.11, I note that, unlike 28
U.S.C. § 455(b), Rule 2.11 requires that a judge disqualify or
recuse himself or herself "in any proceeding in which . . . [t]he
judge . . . on appeal, previously presided as a judge over the
matter in another court."  HRCJC Rule 2.11(a)(6)(D).  In this
context, the term "matter" appears again to be shorthand for
"matter in controversy" and seems to refer to the case currently
pending before the appellate court, though it also may reasonably
be read to encompass any closely related underlying case (e.g.,
the original criminal case underlying a post-conviction
proceeding under Hawaiʻi Rules of Penal Procedure Rule 40).  Cf.
People v. Storms, 617 N.E.2d 1188, 1190 (Ill. 1993) (ruling that
the plain meaning of "matter in controversy" in the Illinois Code

---

 [13]/ The HRCJC also defines the term "impending matter."  An
"'[i]mpending matter' is a matter that is imminent or expected to occur in the
near future.  See [HRCJC] Rules 2.9, 2.10, 3.13, and 4.1."  HRCJC,
"Terminology" (underscoring added).

 [14]/ It is also possible that the terms "matter in controversy" and
"matter" in HRCJC Rule 2.11 are not followed by asterisks simply because they
do not include the terms "pending" and "impending," as do HRCJC Rules 2.9,
2.10, 3.13, and 4.1.

of Judicial Conduct refers to "the case currently pending before the court"); <u>People v. Vasquez</u>, 718 N.E.2d 356, 358-59 (Ill. App. 1999) (applying <u>Storms</u> and concluding that a post-conviction proceeding is sufficiently related to the original prosecution that it falls within the scope of the Illinois rule). Even if one construes "matter in controversy" more broadly than the case before the court, the phrase surely was not intended to encompass all cases involving the same substantive subject or legal issues that the judge presided over in another court. So, too, the same phrase could not have been intended to encompass all cases involving the same substantive subject or legal issues that the judge litigated while in private practice.

Unlike 28 U.S.C. § 455(b), HRCJC Rule 2.11 also includes comments that use the term "matter." "The Comments that accompany the Rules . . . provide guidance regarding the purpose, meaning, and proper application of the Rules." HRCJC, "Scope." In explaining the rule of necessity, for example, Comment 3 to Rule 2.11 states in part:

> [A] judge . . . might be the only judge available in a <u>matter</u> requiring immediate judicial action, such as a hearing on probable cause or a temporary restraining order. In <u>matters</u> that require immediate action, the judge must disclose on the record the basis for possible disqualification or recusal and make reasonable efforts to transfer the <u>matter</u> to another judge as soon as practicable.

(Emphasis added.) Here, again, in context, the term "matter" appears to refer to the case currently pending before the court, not other cases involving the same or similar issues. <u>See</u> <u>Priceline.com, Inc. v. Dir. of Taxation</u>, 144 Hawaiʻi 72, 90 n.33, 436 P.3d 1155, 1173 n.33 (2019) ("the meaning of words may be determined by reference to their relationship with other associated words and phrases").

Nevertheless, I acknowledge that the precise meaning of the phrase "matter in controversy" in HRCJC Rule 2.11 is not entirely clear. Thus, to the extent that federal courts have construed the same or similar terms in 28 U.S.C. § 455, this court may look to federal case law for guidance. <u>See</u> <u>Ross</u>, 89 Hawaiʻi at 380, 974 P.2d at 20 (noting the decisions of federal courts "interpreting a federal statute [*i.e.*, 28 U.S.C. § 455] that contains terms similar to the [then-Code of Judicial Conduct

(**CJC**)], mandating recusal where the judge's impartiality 'might reasonably be questioned'"); State v. Lioen, 106 Hawai'i 123, 128-29, 102 P.3d 367, 372-73 (App. 2004) (reviewing the decisions of "[f]ederal and state courts construing codes of judicial conduct with language comparable to the Hawai'i CJC").

Federal cases that have interpreted the phrase "matter in controversy," as used in 28 U.S.C. § 455(b), "present a somewhat muddled picture." Philip Morris USA Inc., 156 F. Supp. 3d at 44. There is limited case law interpreting 28 U.S.C. § 455(b), and "courts that have interpreted this section have widely divergent views with respect to its meaning and application." Blue Cross & Blue Shield of Rhode Island v. Delta Dental of Rhode Island, 248 F. Supp. 2d 39, 43 (D.R.I. 2003). Some courts have read "matter in controversy" strictly to mean only the actual case pending before the court. See id. at 46. For example, the court in Blue Cross & Blue Shield, after reviewing the relevant case law, concluded: "[Section] 455(b)(2) should be given a restrictive reading; that is, it should be read as applying only to the case that is before the Court as defined by the docket number attached to that case and the pleadings contained therein . . . ." Id.; see also United States v. Scherer, No. 2:19-CV-03634, 2019 WL 5064686, at *1 (S.D. Ohio Sept. 17, 2019) ("The term 'matter in controversy' refers 'to the actual case that is pending before the Court.'" (quoting Jones v. Philadelphia Parking Auth., No. 11-4699, 2011 WL 4901291, at *2 (E.D. Penn. Oct. 14, 2011))); Di Giustino v. SmarteCarte Co., No. CV 16-00192 LEK-KSC, 2018 WL 1440214, at *4 (D. Haw. Mar. 22, 2018) ("More importantly, the undersigned [judge] never served as a lawyer in this matter, nor has a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter.") (emphasis added and original emphasis omitted); Pitrolo v. County of Buncombe, N.C., No. 06cv199, 2013 WL 588753, at *5 (W.D.N.C. Feb. 13, 2013) (citing approvingly the definition of "matter in controversy" in Blue Cross & Blue Shield).

Other courts have held that "matter in controversy" has a broader, though not unbounded, meaning. See, e.g., Little Rock

Sch. Dist. v. Armstrong, 359 F.3d 957, 960 (8th Cir. 2004) (explaining that the phrase "matter in controversy" must mean something other than the word "case"); Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1, 839 F.2d 1296, 1302 (8th Cir. 1988) (explaining that under the view that "different cases may constitute the same 'matter in controversy,' the question of what kinds of cases are sufficiently related for the purposes of § 455(b)(2) would remain a question of judgment and degree"); Philip Morris USA Inc., 156 F. Supp. 3d at 43 (stating that "the question of recusal under [§] 455(b)(2) is necessarily a fact-intensive inquiry" and noting various factors courts have considered in determining the "matter in controversy"); United States v. Lawson, Crim. No. 3:08-21-DCR, 2009 WL 1702073, at *2 (E.D. Ky. June 17, 2009) ("While analysis under this statutory section is fact-intensive, the phrase 'matter' as used in § 455(b)(2) is intended to have broader meaning than the specific case pending for resolution.").

For example, in Armstrong, the Eighth Circuit explained:

> The language chosen by Congress, "matter in controversy," is not defined by the statute.  However, Congress easily could have substituted the word "case" for the words "matter in controversy," but did not do so.  This deliberate choice by Congress demonstrates an intent that the words "matter in controversy" mean something other than what we commonly refer to as a "case."  In fact, Congress used the words "proceeding," "case in controversy," and "subject matter in controversy" in various other subsections of § 455(b) to describe situations where a judge must disqualify himself.  Thus, we must assume that Congress ascribed a particular meaning to the words "matter in controversy," and we must try to discern that meaning.[15]

359 F.3d at 960 (footnote added).  According to the court, in determining whether two proceedings are the same "matter in

---

[15] It is noteworthy that, unlike 28 U.S.C. § 455(b), HRCJC Rule 2.11 does not use the phrase "case in controversy."  Indeed, HRCJC Rule 2.11(a)(6)(B) substitutes "matter in controversy" for the federal statute's "case in controversy."  Compare HRCJC Rule 2.11(a)(6)(B) (a judge shall disqualify himself or herself in any proceeding in which the judge "served in governmental employment and in such capacity, participated personally and substantially as a lawyer or public official concerning the proceeding, or has publicly expressed in such capacity an opinion concerning the merits of the particular matter in controversy") with 28 U.S.C. § 455(b)(3) (a judge shall disqualify himself or herself "[w]here he [or she] has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy") (emphases added).

controversy," "we look to the substance of the issues argued and decided in the two proceedings." Id. Applying this standard, the court concluded that a trial judge's prior representation of another judge at a much earlier stage of the same case did not constitute participation in the same "matter in controversy," where that representation was limited to the issue of the latter judge's disqualification and did not go to the merits of the case, the disqualification motion had been addressed under a separate docket number, and the issues before the court on the merits were not "sufficiently related" to the prior representation. Id. at 960-61.

Other federal courts have used the same or similar phrasing to express the relatedness (or lack thereof) between the case in which recusal is sought and the judge's prior legal work or associations. See, e.g., Hoffenberg v. United States, 333 F. Supp. 2d 166, 174-76 (S.D.N.Y. 2004) (inquiring whether judge's purported service as a lawyer in another matter and the case pending before him were "significantly related"); In re Letters Rogatory from Supreme Court of Ontario, 661 F. Supp. 1168, 1173 (E.D. Mich. 1987) (inquiring whether subpoena matter and former law partner's representation were "sufficiently related"); Preston v. United States, 923 F.2d 731, 735 (9th Cir. 1991) (asking "whether the relationship between the judge and an interested party was such as to present a risk that the judge's impartiality in the case at bar might reasonably be questioned by the public"). For example, in United States v. DeTemple, 162 F.3d 279 (4th Cir. 1998), the court applied 28 U.S.C. § 455(b)(2) by examining the nature and extent of the connection between the judge's prior professional association and the case then before him. Id. at 284. In identifying the matter in controversy, the court looked at the degree of attenuation between the prior case in which the judge's former partners were involved and the case over which the judge was then presiding. Id. at 285. The court explained that the fact "that two suits might have some facts in common [is] not controlling on whether they qualify as the same matter in controversy." Id. at 286 (citing Dixie Carriers, Inc. v. Channel Fueling Serv. Inc., 669 F. Supp. 150, 152 (E.D. Tex.

26

1987)).  While acknowledging that there was some overlap in the two cases at issue, the court held that "[the defendant] has failed to show that the [matter involving the former partner] concerned the case against him in more than a very tangential way" and that "any connection between [the two cases] was too attenuated to be considered the same matter in controversy."  Id. at 285-86 (citing Pulaski Cty. Special Sch. Dist. No. 1, 839 F.2d at 1302).

In addition to the court in DeTemple, a number of other courts examining the relationship between a pending matter and the judge's prior representation or association have concluded that recusal was not required under Section 455(b)(2) where the matters were not "sufficiently related" or the relationship was "too attenuated."  See, e.g., Armstrong, 359 F.3d at 960-61; Philip Morris USA Inc., 156 F. Supp. 3d at 47 (concluding that "my former law partner's representation of [an anti-tobacco organization] is too attenuated a representation to be considered part of the 'matter in controversy,'" while acknowledging there was "substantial overlap between the subjects of the two matters"); E.I. du Pont de Nemours & Co., 847 F. Supp. 2d at 857 (denying recusal where the plaintiff asserted that two of the judge's former law partners represented DuPont in another case while the judge was a partner and that evidence in the other case might be relevant to the pending case).

Matsuyoshi relies on a handful of federal cases in which recusal was granted or ordered under Section 455(b)(2), including Preston, 923 F.2d at 734-35; In re Rodgers, 537 F.2d 1196, 1197-98 (4th Cir. 1976); and In re Letters Rogatory, 661 F. Supp. at 1173.  In those cases, however, a conflict had arisen from the judge's prior law firm's representation of a client in a matter that was the same or closely related to the case before the court.

In Preston, for example, a decedent's heirs brought a wrongful death action under the Federal Tort Claims Act against the federal government.  923 F.2d at 732.  The heirs contended that the trial judge was required to recuse because his former law firm represented an interested third party, Hughes Aircraft

27

Company, the decedent's employer at the time of his death. Id. The Ninth Circuit held that recusal was required in part because, "[a]lthough Hughes was never a party to the litigation before [the trial judge], had judgment been rendered against the government a potential claim for indemnification against Hughes would have been triggered under a contract between Hughes and the government." Id. at 731, 732. Further, the trial judge's former law firm had represented Hughes both in a state court action involving the decedent's death, while the judge was employed by the firm, and in pre-trial discovery in the same federal case. Id. at 734–35. The Ninth Circuit also focused on these close connections in concluding that recusal was required. Id.

In In re Rodgers, another case cited by Matsuyoshi, the defendants were charged with using unlawful means to secure passage of a bill in the Maryland state legislature. 537 F.2d at 1197-98. They moved for recusal of the trial judge based on the fact that his former law partner had represented a client in its own efforts to get the bill passed. Id. The evidence showed that the former law partner and his client "will undoubtedly testify about the events that took place before the judge withdrew from his law firm." Id. at 1198. The Fourth Circuit ordered the trial judge's recusal because the defendants intended to "attempt to use the [judge's former law] partner and his client as witnesses to prove that their goals [in obtaining passage of the bill] were identical and legitimate." Id.

Matsuyoshi also relies on In re Letters Rogatory. There, the trial judge recused himself because his former law partner's representation could have become an issue in the matter before the court. 661 F. Supp. at 1174. The issue was whether the judge could preside over a subpoena matter stemming from a Canadian judicial proceeding against the former law partner's client. Id. at 1172. The former law partner, who was subpoenaed for testimony, had advised the client about loan transactions that were the subject of the Canadian proceeding. Id. at 1170 n.5, 1172. The judge recused in part because, if the parties had asked him to resolve an issue of attorney-client privilege, he

28

would have had to examine the contents of documents prepared by his former law partner.  Id. at 1174.

Based on the text of HRCJC Rule 2.11, a contextual reading of its various provisions (and comments) using the terms "matter in controversy" and "matter," a review of relevant federal cases construing parallel federal law, and recognizing the distinctions between HRCJC Rule 2.11 and 28 U.S.C. § 455(b), I conclude that the phrase "matter in controversy," as used in Rule 2.11, should be construed as follows:  The touchstone for determining the "matter in controversy" is the case currently pending before the court, *i.e.*, the case in which recusal is raised.  The "matter in controversy" also encompasses matters so closely related to the case at bar as to present an objective basis to conclude that the judge's impartiality might reasonably be questioned.  Determining the relatedness of such matters presents an issue of judgment and degree based on the circumstances.

### b.    Prior Representation of Mortgagees in Other Cases

Applying this "matter-in-controversy" standard to the circumstances here, I conclude that my prior representation of mortgagees in other cases, including in Bald and the Bald appeal, is too attenuated to be considered part of the "matter in controversy" before this court for purposes of HRCJC Rule 2.11(a)(6)(A).  In reaching this conclusion, I recognize that the general subject matter of the pending case and these other matters overlap, as they all concern alleged wrongdoing by mortgagees in connection with their nonjudicial foreclosures of real-property mortgages.  But "[t]he fact that two suits or issues have facts in common does not control whether they qualify as the same matter in controversy."  E.I. du Pont de Nemours & Co., 847 F. Supp. 2d at 860; see DeTemple, 162 F.3d at 286 (same).  Were that the case, no lawyer with experience in cases involving a particular subject matter, and a reputation for zealously representing his or her clients, could serve as a judge in unrelated cases involving the same or similar issues. Likewise, no trial court judge presiding over cases involving the

29

same subject matter could later serve as an appellate judge in other cases raising the same or similar issues.

Matsuyoshi asserts that "there is a substantial relationship" between the pending case and my prior representation of mortgagees because, several years ago, I allegedly "argued that the Bickerton firm was engaged in a multi-case campaign to overturn and seek relief from nonjudicial foreclosures under HRS Chapter 667 Part I," prior to learning in 2015 that this case "was part of that overall effort." Just to be clear, Matsuyoshi does *not* assert that as an advocate in other cases, I made a statement about the merits of the current appeal, which was filed in 2019. Rather, she suggests a disqualifying interest based on the fact that I eventually came to *learn of the existence* of the supreme court's 2015 published opinion in the earlier appeal in this case. See Kondaur, 136 Hawai'i 227, 361 P.3d 454. This cannot be the applicable standard for recusal, as it would undermine the ability of former lawyers to serve as judges in any case that involves their former practice area (or even their legal interests). In addition, Matsuyoshi offers no source for the purported statement she attributes to me.

What Matsuyoshi does cite and quote verbatim are several paragraphs in the answering brief that I filed in the Bald appeal, a year and a half *before* Counsel Bickerton appeared as counsel for the plaintiffs-appellants in that appeal.[16/] Those paragraphs identify several other federal and state cases raising issues related to the issues raised in the Bald appeal. In fact, Ninth Circuit Rule 28-2.6 *requires* that each party identify in a statement accompanying its initial brief any known related case, which includes any case "rais[ing] the same or closely related issues[,]" pending in the Ninth Circuit. The Hawai'i Rules of Appellate Procedure include a similar rule. See HRAP Rule 28(b)(11). Explaining the nature of related cases in a party's brief, and noting their common counsel, cannot reasonably be construed as transforming all of the cases into a single "matter

_____

[16/]    The answering brief in the Bald appeal was filed on February 18, 2014. Counsel Bickerton appeared as counsel for the plaintiffs-appellants in the Bald appeal on September 1, 2015, and for the plaintiffs in the federal district court Bald action on June 7, 2017.

in controversy."  Regardless, the present case was not identified as a related case in the Bald appeal by *any* of the parties.[17]

Matsuyoshi also argues that "[a] decision herein on the question of whether certified mail is deemed delivered upon mailing will directly impact and call into question a large number of foreclosures conducted by Judge Wadsworth's former client, Wells Fargo Bank, N.A., which used the certified mail method extensively, including foreclosures that remain at issue in [Bald], a case in which Judge Wadsworth formerly acted as counsel for the mortgagee bank."  To clarify, Matsuyoshi is *not* arguing that while representing Wells Fargo in Bald, I litigated the mail delivery issue now before this court in the current appeal.  The mail delivery issue that Matsuyoshi now identifies as an issue in Bald was not litigated in that case during the period that I represented Wells Fargo.  Rather, Matsuyoshi appears to argue that a mail delivery issue was first raised in Bald via the First Amended Complaint, which was filed on November 27, 2017, again, nearly a year after my representation of Wells Fargo ended.  Specifically, Matsuyoshi points to Paragraph 17 of the First Amended Complaint, which alleges:

> 17. WELLS FARGO further breached its duties in a substantial number of such cases by foreclosing after performing one or more of the following unlawful or wrongful acts:
>
> a. Sending the borrower a notice of acceleration that failed to give the notice that the standard form mortgage required about the unconditional right the borrower had to bring a separate suit to stop the sale[.]

While this paragraph does not appear on its face to raise a mail delivery issue, Matsuyoshi also submits copies of several "Foreclosure Affidavits . . . of members of the putative class in Bald . . . reflect[ing] that the 'notice of default' was sent by Wells Fargo to the class member by 'certified mail, return receipt requested.'"  These foreclosure affidavits of other

---

[17]    It is also noteworthy that in Hungate, which Matsuyoshi now appears to contend is also part of the same "matter in controversy" as the pending appeal, Plaintiff-Appellant Hungate filed a Statement of Related Cases identifying 17 cases purportedly "related to" Hungate.  See Plaintiff-Appellant Russell L. Hungate's Opening Brf. at 46-47, Hungate v. Law Office of David B. Rosen, No. CAAP-14-0000772 (Haw. App. Sept. 12, 2014), JIMS dkt. 37. That Statement of Related Cases did not include the case giving rise to the appeal before this court.  Id.

mortgagors are not part of the record in this appeal. Nonetheless, I acknowledge the apparent intention of counsel for Matsuyoshi to litigate a mail delivery issue in Bald when the current stay is lifted.

At present, it appears that the Hawaiʻi Supreme Court is considering the certified question of state law submitted by the federal district court in Bald. See supra. Further proceedings in the district court are stayed pending action by the supreme court. Lima, 2019 WL 2146585, at *14. It also appears that the court in Bald submitted the certified question in connection with summary judgment motions filed by the mortgagee defendants. Id. at *5-*6. Given the current procedural posture of Bald, one can only speculate as to whether a decision in this appeal regarding the mail delivery issue will have any affect on the plaintiffs' claims in Bald.[18] Matsuyoshi simply has not established a sufficient relationship between the pending appeal and Bald based on the potential overlap of this one issue. And even if the overlap were definite, it would not control whether these two cases qualify as the same matter in controversy. See DeTemple, 162 F.3d at 286 ("that two suits might have some facts in common [is] not controlling on whether they qualify as [the] same matter in controversy" (citing Dixie Carriers, Inc., 669 F. Supp. at 152)).

As to my prior representation of Wells Fargo and other mortgagees in other cases while in private practice, I have not represented these former clients for more than four years. In addition, my former AHFI colleagues withdrew as counsel for Wells Fargo in Bald on January 7, 2019, over two years ago, just months after AHFI combined with Dentons. Matsuyoshi thus has not established any circumstances like those at issue In re Rodgers and In re Letters Rogatory.

Preston is also inapposite. There, an indemnity agreement existed between the judge's former law firm's client (Hughes) and the federal government, which was a party to the

---

[18]   Matsuyoshi does not argue that the court's decision in this appeal will have preclusive (i.e., collateral estoppel) effect on the plaintiffs' claims in Bald.

case pending before the judge, such that a judgment against the government could lead to an indemnity claim against the law firm's client.  Here, by contrast, Matsuyoshi has not shown that the outcome of this case will trigger a similar legal obligation or have any direct pecuniary impact on any former mortgagee client.  And even if the mortgagee's legal position in the current appeal were shown to mirror that of a former client (which has not been shown), their common positional interest would be too attenuated to warrant my recusal under HRCJC Rule 2.11(a)(6)(A).  See Philip Morris USA Inc., 156 F. Supp. 3d at 48 ("although [a former law partner's client's] legal position mirrors [the defendant's], their common positional interest is simply too attenuated to warrant my recusal under Section 455(b)(2)").

Matsuyoshi further contends that my February 14, 2014 declaration, filed in the Bald appeal, rendered me a "witness" in the matter in controversy.  Because Matsuyoshi appears to raise this argument under HRCJC Rule 2.11(a)(6)(C), I separately analyze her contention below.

Accordingly, for all of these reasons, I conclude that HRCJC Rule 2.11(a)(6)(A) does not require my recusal in this appeal.

### 3.    Recusal Under HRCJC Rule 2.11(a)(6)(C)

On February 14, 2014, I filed a declaration in the Bald appeal in support of Wells Fargo's request to the Ninth Circuit for judicial notice.  The request asked the court to take judicial notice of certain court records filed in other cases, as identified in Wells Fargo's answering brief (see supra), which raised issues related to the issues in the Bald appeal.  My accompanying declaration authenticated the documents that Wells Fargo sought to have judicially noticed, none of which concerned the present case (e.g., "Attached hereto as Exhibit 5 is a true and correct copy of the Complaint, filed August 6, 2013, in Hungate v. Law Office of David B. Rosen, Civ. No. 13-1-2146-08 RAN (Haw. 1st Cir. Ct.)[.]")  This is the common means by which litigants in the state and federal courts in Hawaiʻi submit

documents to the court for its consideration.  Filing such a declaration did not metamorphize me into "a witness concerning the matter [in controversy]."  HRCJC Rule 2.11(a)(6)(C).

Indeed, Matsuyoshi's counsel in this appeal filed a similar declaration, attaching various documents from other cases, in support of her motion for recusal or disqualification.  See Declaration of James J. Bickerton, filed on Dec. 21, 2020.  Submitting a declaration for this limited purpose does not transform an attorney representing a party into a fact witness in the case.  Were it otherwise, the lawyer submitting such a declaration would potentially create a conflict of interest with his or her own client.  See Hawaiʻi Rules of Professional Conduct Rule 3.7.

Matsuyoshi offers nothing else in support of her argument characterizing me as a "witness" in the "matter in controversy," given that I have no personal knowledge of the evidentiary facts related to the matter.  See supra.  Accordingly, I conclude that HRCJC Rule 2.11(a)(6)(C) does not compel my recusal in this appeal.

## D.    Recusal Under HRCJC Rule 1.2

Lastly, Matsuyoshi contends that I must recuse myself because the same factors that purportedly require my recusal under HRCJC Rule 2.11(a), create "an appearance of impropriety" that compels my recusal under HRCJC Rule 1.2.  Again, I disagree.

"The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired."  Office of Disciplinary Counsel v. Au, 107 Hawaiʻi 327, 338, 113 P.3d 203, 214 (2005) (quoting Ross, 89 Hawaiʻi at 380, 974 P.2d at 20) (brackets omitted); see HRCJC, "Terminology" (defining "[a]ppearance of impropriety").  "Therefore, the test for disqualification due to the appearance of impropriety is an objective one, based not on the beliefs of the petitioner or the judge, but on the assessment of a reasonable impartial onlooker apprised of all the facts."  Id. (quoting Ross, 89 Hawaiʻi at

380, 974 P.2d at 20).  See <u>In re Conservation District Use Application HA-3568</u>, 143 Hawai'i at 392, 431 P.3d at 765 ("the correct test for impropriety [is] whether a reasonable person knowing all the facts would doubt the impartiality of [the adjudicator], or whether the circumstances would cause a reasonable person to question [the adjudicator's] impartiality"). This is essentially the same test applied in determining whether the circumstances present an objective basis to conclude that the judge's impartiality might reasonably be questioned.[19]  See <u>Ross</u>, 89 Hawai'i at 380, 974 P.2d at 20.  And, similarly, a judge is duty-bound *not* to withdraw "where the circumstances do not fairly give rise to an appearance of impropriety and do not reasonably cast suspicion on his [or her] impartiality."  <u>Id.</u> at 377, 974 P.2d at 17 (quoting <u>Brown</u>, 70 Haw. at 467 n.3, 776 P.2d at 1188 n.3) (emphasis omitted).  See <u>DeTemple</u>, 162 F.3d at 287 (recognizing that overly cautious recusal would improperly allow litigants "to exercise a 'negative veto' over the assignment of judges" simply by hinting at impropriety (quoting <u>In re United States</u>, 666 F.2d 690, 694 (1st Cir. 1981))).

Where the connection to an alleged disqualifying interest is "too attenuated," the Hawai'i Supreme Court has rejected arguments that such circumstances rebut the presumption that the adjudicator would be capable of impartiality and create an appearance of impropriety.  <u>In re Conservation District Use Application HA-3568</u>, 143 Hawai'i at 392, 431 P.3d at 765 ("the circumstances did not fairly give rise to an appearance of impropriety and reasonably cast suspicion on [the adjudicator's] impartiality").  See <u>Ross</u>, 89 Hawai'i at 377, 974 P.2d at 17 (noting that the judge's "connections to KTA had no relation to the present controversy, [the defendant's] trial for criminal harassment"); <u>cf.</u> <u>Brown</u>, 70 Haw. at 467, 776 P.2d at 1187-88 (due process was offended where the judge who tried the defendant's

---

[19]  This is not surprising, as one of the purposes of HRCJC Rule 2.11(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety.  See HRCJC Rule 1.2, Comment 3 ("Conduct that compromises or appears to compromise the . . . impartiality of a judge undermines public confidence in the judiciary.").

criminal contempt proceeding was the same judge who had charged the defendant with contempt).

For the reasons discussed above, I cannot conclude that a reasonable, well-informed observer would question my ability to be impartial in this appeal simply because of my previous advocacy, while in private practice, on behalf of mortgagees in other nonjudicial foreclosure litigation. "Reasonable, well-informed observers understand that . . . lawyers personally . . . do not necessarily agree or identify with their clients' actions or interests." Phillip Morris USA Inc., 156 F. Supp. 3d at 50. That holds true regardless of any similarity between the issues once litigated and those pending before the judge. No reasonable person would think, for example, that because I represented mortgagees in the past that I favor mortgagees violating statutory and other legal duties in conducting foreclosures. See id. ("No reasonable person . . . would think that because I have spent my career representing the criminally accused, I favor people breaking the law.") Similarly, no reasonable person would think, based on my prior advocacy, that now, as a judge, I do not treat mortgagors fairly in foreclosure cases.

As also previously discussed, I have not represented any mortgagee client for more than four years, I have no personal knowledge of any evidentiary facts in this matter, and Matsuyoshi has not established any connection between this appeal and Bald (or any other case) that would cause a well-informed observer to question my ability to be impartial in this appeal. On this record, Matsuyoshi has failed to establish that a reasonable person, knowing all the facts, would perceive as materially impaired my independence, integrity, impartiality, temperament, or fitness to fulfill my judicial responsibilities with respect to this appeal.[20]

Accordingly, I conclude that HRCJC Rule 1.2 does not require my recusal in this appeal.

---

[20] By addressing Matsuyoshi's arguments in detail, I do not mean to suggest that the same level of detail is necessary in resolving every recusal motion that may come before a court. Rather, the applicable standard for recusal governs the scope of the court's inquiry in a particular case.

## III. Conclusion

For the foregoing reasons, Matsuyoshi has not established a statutory basis for disqualification under HRS § 601-7(b), and I decline to recuse under HRCJC Rules 1.2 and 2.11(a). Matsuyoshi's motion for disqualification or recusal is therefore denied.


/s/ Clyde J. Wadsworth


On the motion:

James J. Bickerton and
Bridget G. Morgan-Bickerton
(Bickerton Law Group LLLP)
for Defendant-Appellant

Wayne Nasser,
Francis P. Hogan,
Benjamin M. Creps, and
Nicholas G. Altuzarra
(Ashford & Wriston, LLLP)
for Plaintiff-Appellee